N. J. Dept. Labor—Rump v. Knickerbocker Coal and Ice Co.

NEW JERSEY DEPARTMENT OF LABOR.
WORKMEN'S COMPENSATION BUREAU.

NICK RUMP, PETITIONER, v. KNICKERBOCKER COAL AND ICE COMPANY, RESPONDENT.

**Injury Resulting From Load of Frozen Coal Falling on Petitioner —Only Question a Medical One—In Hospital Three Weeks— Unable to Work Afterward—Evidence Examined and Award Made.**

On determination and finding of facts.

For the petitioner, *William H. Smith.*

For the respondent *Edward Davis.*

\*        \*        \*        \*        \*        \*        \*        \*        \*

It was admitted by counsel that the petitioner, Nick Rump, was injured in an accident arising out of and in the course of his employment, on January 31st, 1925, with the respondent, Knickerbocker Coal and Ice Co., and the only question involved was the medical question.

The petitioner said that he was injured on the day aforementioned, and that he was confined in the St. Barnabas Hospital for a period of three weeks; that he was discharged from the said hospital on February 23d, 1925; that he was examined by Dr. Edgar S. Holden on March 31st, 1925.

Dr. Holden's testimony was to the effect that at the time of the examination he found some crepitation acromac of the clavicular joint, abduction of the arm to one hundred and fifty degrees, slight restriction of the anterior motion, slight limitation of rotation, tenderness below right clavide from stermun to shoulder joint, over three upper ribs, some pain in neck, muscle spasm in muscles left side of neck, left lateral motion of neck restricted and moderate restriction to right, and Dr. Holden further testified that there was a ten (10%) total permanent disability.

The petitioner testified that he has severe pains about his shoulder and chest and back and the muscles in the back of the neck at the present time; complains of sleeplessness and dizziness.

Dr. Markens was then called by petitioner, and he testified that he examined the petitioner just before the trial, and after making the examination of him found limitations of motions about the clavicular joint, limitations of arm, slight tenderness between .the right clavicle, pains in the muscles of the neck and limitations of the lateral motion, and said that, in his opinion, there was a ten per cent. (10%) total permanent disability.

Both the wife of petitioner and the petitioner testified that he was employed within the last six months by the Public Service, and endeavored to do a day's work, but come home sick, and complained of the pains mentioned heretofore.

The respondents produced Dr. Edgar S. Ill, who said that he treated him at St. Michael's, and that he was there a week, and that he was in severe pains, and that he spit blood for a week. They discharged him from hospital on February 23d, and further said that at the time of this discharge he did not say that the man was cured, but he said that the practice was to discharge people when they were able to get about, or words to that effect, and that he made no estimate of any disability, as he did not make estimates of disability.

Dr. Tansey was next called by the respondent, and he testified that during the time at the hospital he saw him, and even after his discharge from the hospital he treated him, and that was between February 24th, 1925, and about ten days later. He said that there was limited motion in the right arm, pains in right chest and upper areas of lungs, and further testified that, after he was treating him ten days after February 24th, he said that he would be able to get to work in about a week, but during that week he did not examine him, and did not examine him until some time in July, when he said that he was in good condition, and that

he apparently had recovered. He further said that he believed that the petitioner could do more than he wanted us to believe.

In view of all the facts in the case, there is no question in my mind, when I consider the nature of the accident, a great weight of frozen coal weighing about a ton or two falling upon the right side of the petitioner. The fact that he was in the hospital for three weeks; the fact that he was treated for another period of two or three weeks. Dr. Holden's testimony, Dr. Holden being the doctor employed by the state rehabilitation commission, and Dr. Holden stated that there is a ten per cent. total permanent disability.

There is no testimony on the part of the respondent showing what the actual condition is at the day of the trial. This was brought out by the petitioner, who showed through Dr. Markens that at the time of the trial the petitioner was ten per cent. total permanently disabled.

In view of all the facts and circumstances in the case, I find that the petitioner is entitled to the amount already received by him, sixty-eight ($68) dollars, for temporary disability, and seven per cent. (7%) total permanent disability, amounting to thirty-five (35) weeks at the rate of seventeen ($17) dollars per week.

\*     \*     \*     \*     \*     \*     \*     \*     \*

HARRY J. GOAS,
*Deputy Commissioner.*